In re Dennis GREENMAN SECURITIES LITIGATION.

Hugo L. BLACK, Jr., Receiver for Barclay Financial Corp., Plaintiff,

v.

Dennis GREENMAN, et al., Defendants. (Two cases).

Harry PURE, et al., Plaintiffs,

v.

PAINE, WEBBER, JACKSON & CURTIS, et al., Defendants.

Van C. WILKS, et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

EVAN REGAS ASSOCIATES, LTD., etc., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

W. T. GREEN, Jr., et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

Bryan SMITH et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

Don CONDUFF, et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

Norman NORWOOD, et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

Benno BAUER, et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

WENDELL LOTT ASSOCIATES, LTD., etc., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

TOTTEN GROUP, LTD., etc., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

A & O BUILDERS, INC., OF DUVAL COUNTY, etc., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

Lynwood A. MADDOX, Plaintiff,

v.

A. G. BECKER, INC., et al., Defendants.

Glen NORWOOD, et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

H. B. "Red" JACKSON, et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

Sam RUDD, et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

RIVER CITY ASSOCIATES, LTD., etc., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

Norma M. KIRBY, Plaintiff,

v.

A. G. BECKER, INC., et al., Defendants.

C L & H ENTERPRISES, INC., etc., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

John S. HULSBERG, et al., Plaintiffs,

v.

A. G. BECKER, INC., et al., Defendants.

ARTHUR JACOWITZ INSURANCE AGENCY, INC., et al., Plaintiffs,

v.

Dennis E. GREENMAN, et al., Defendants.

Jack SCHILLINGER, et al., Plaintiffs,

v.

Dennis E. GREENMAN, et al.,
Defendants.

METROPOLITAN BANK & TRUST
COMPANY OF TAMPA, Plaintiffs,

v.

Dennis E. GREENMAN, et al.,
Defendants.

Hyman R. BAER, et al., Plaintiffs,

v.

Dennis GREENMAN, et al., Defendants.

SEDGELEY INVESTMENTS, LTD.,
et al., Plaintiffs,

v.

Dennis GREENMAN, et al., Defendants.

Nos. 81–708–A1–CIV–WMH, 81–708–A2–
CIV–WMH, 81–1539–CIV–WMH, 81–
1172–CIV–WMH to 81–1186–CIV–WMH,
81–1203–CIV–WMH to 81–1205–CIV–
WMH, 82–127–CIV–WMH, 82–330–CIV–
WMH, 81–2743–CIV–WMH, 82–204–CIV–
WMH and 82–62–CIV–WMH.

United States District Court,
S. D. Florida,
Miami Division.

April 15, 1982.
As Amended April 28, 1982.

Hugo L. Black, Jr., Receiver, Kelly, Black, Black & Earle, P. A., Daniels & Hicks by Mark Hicks, Alan G. Greer, Floyd, Pearson, Stewart, Richman, Greer & Weil, P. A., Tew, Critchlow, Sonberg, Traum & Friedbauer, P. A. by Thomas Tew, and Richard H. Critchlow, Rosenberg, Rosenberg, Reisman & Glass by R. Hugh Lumpkin and James E. Glass, Miami, Fla., Lee H. Schillinger, Law Office of Lee H. Schillinger, Coral Gables, Fla., Levenstein, Posess & Heimbrig by Richard H. Levenstein, Boca Raton, Fla., Mershon, Sawyer, Johnston, Dunwoody & Cole by Michael C. Cesarano, Miami, Fla., for plaintiffs.

Paul, Landy, Beiley, Harper & Metsch by Lawrence R. Metsch and Richard E. Brodsky, Miami, Fla., Commander, Legler, Werber & Dawes by Steven A. Werber, Jacksonville, Fla., Thrasher & Whitley, P. A. by H. Grady Thrasher, III, Atlanta, Ga., Culverhouse, Tomlinson, Mills & Cone by Hugh F. Culverhouse, Jr., Miami, Fla., Winkles & Trombley, P. A. by Gary R. Trombley, Tampa, Fla., McDaniel, Chorey & Taylor by John L. Taylor, Jr., and William G. McDaniel, Atlanta, Ga., and Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, P. A. by Stuart J. McGregor, Miami, Fla., Gregory, Cours, Paniello, Johnson, Hayes & Hoft by Paul B. Johnson, Tampa, Fla., Rogers, Towers, Bailey, Jones & Gay, P. A. by G. Kenneth Norrie, Jacksonville, Fla.,

Blackwell Walker Gray Powers Flick & Hoehl by David M. Rogero, J. Frost Walker III, Miami, Fla., Gaston Snow & Ely Bartlett Hall & Swann by Richard M. Swann and Lee Mandel, Coral Gables, Fla., Brown, Wood, Ivey, Mitchell & Petty, New York City, and Podhurst, Orseck, Parks Josefsberg, Eaton, Meadow & Olin, P. A. by Aaron Podhurst, Arky, Freed, Stearns, Watson & Greer by Peter W. Homer, Gunn, Venney & Buhler & Thomas L. by Robert E. Venney, Miami, Fla., Trotter, Bondurant, Miller & Hishon by Jeffrey M. Smith, Atlanta, Ga., and Britton, Cohen, Kaufman, Benson & Schantz by Edward A. Kaufman, Miami, Fla., for defendants Dennis Greenman, Paine, Webber, Jackson & Curtis, A. G. Becker, Inc., et al.

## AMENDED ORDER

HOEVELER, District Judge.

On April 15, 1982 this Court issued a comprehensive order which certified this cause as a class action under Rule 23(b)(1) of the Federal Rules of Civil Procedure. *See* Pre-Trial Order 1.

In preparing said order for publication, this Court has discovered a number of minor errors which warrant correction. None of these corrections, however, has altered the substance of the Court's original order. Therefore, it is

ORDERED AND ADJUDGED that the Court's Pre-Trial Order 1, dated April 15, 1982, shall be amended to read as attached.

## PRE-TRIAL ORDER I

On April 1, 1981, the Securities and Exchange Commission filed an enforcement action against Dennis Greenman and Barclay Financial Corp., concerning the operation of the Greenman "Special Arbitrage Program" or "Short Term Trading Program." Since then, investigations into Mr. Greenman's activities have spawned two ancillary complaints as well as twenty-four individual investor suits filed in the Southern District of Florida alone. These later actions essentially seek to recover lost investments from Mr. Greenman and several

securities firms. Although most of the approximately 600 known investors have either filed actions with this Court or made claims with Barclay's court-appointed receiver, a number of investors have not been heard from and many may presently be unrepresented.

Noting that all of the investor actions refer to the same fraud scheme and pose similar questions of law and fact, the Court has considered different procedural methods for minimizing duplication of legal efforts and providing prompt adjudication of disputed issues. While the Court recognizes the need to protect both investors' and defendants' rights to assert their claims and defenses, the Court also finds great advantage in considering all of these cases together—either by consolidating the actions under Rule 42(a) of the Federal Rules of Civil Procedure or by ordering some form of class action under Rule 23, of the Federal Rules of Civil Procedure.

The Receiver, agreed to by the parties to the initial action (*S. E. C. v. Greenman, et al.*, 81–708–CIV–WMH), asserted that he had the legal authority to prosecute all actions necessary to make the investors whole and should be permitted to do so. Thus far, the Receiver has recovered and placed in his account in excess of twenty million dollars of an alleged fifty to sixty million in total losses. Attorneys for certain investors objected to the Receiver's right to proceed with causes of action against third parties, not said to be "holding" investor funds but who may ultimately be liable for the acts of Mr. Greenman.

Consequently, on December 14, 1981, and February 18, 1982, this Court had an opportunity to hear argument from plaintiffs' and defendants' counsel on how the Greenman litigation should proceed. In addition, this Court has reviewed the many written proposals submitted by counsel of record. In light of all the information presented, the Court finds that the class action procedures outlined in the "Manual for Complex Litigation" (*C. Wright & A. Miller,* 1977) and Rule 23 of the Fed.R.Civ.P., provide the most efficient and manageable method for

adjudicating all actions relating to the "Greenman Short Term Trading Program."

Certifying a class action involving a general class of plaintiff investors would allow the Greenman litigation to proceed in a unified manner by allowing the Court to

1. identify and litigate issues of fact and law common to all investors;

2. identify and isolate various investor interests;

3. set the pace and scope of discovery;

4. control attorneys fees;

5. protect the interests of the unrepresented investors; and

6. render a final judgment that will bind all class members—including those presently unrepresented. *See* Manual for Complex Litigation.

Moreover, class action principles give the Court a high degree of control in structuring ongoing litigation for classes and subclasses can be certified or decertified at anytime—thus allowing the Court to consider each action and each class independently.

When viewed in their totality, all of the Greenman cases satisfy the general class action prerequisites outlined in Rule 23(a). That rule states:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Since the Greenman litigation involves approximately 600 potential claimant-investors and there are twenty-six cases presently pending in the Southern District of Florida which present essentially similar claims as well as common questions of law and fact, the Greenman litigation clearly meets the first three requirements. In addition, the fourth prerequisite can be easily satisfied by designating any number of plaintiffs as a class representative.

The Court finds greater difficulty, however, in determining which subdivision of Rule 23(b) provides the strongest basis for class certification. The major difference between subdivisions 1, 2 and 3 is that only subdivision 3 allows members of a designated class to excuse themselves from participating in class litigation. *See Van Gemert v. Boeing*, 259 F.Supp. 125, 130 (S.D.N.Y. 1966). Existing class action law, however, indicates that these subdivisions serve special purposes when applied to securities cases. *See* 5 H.B. Newberg, *Class Actions* § 8822 at 875. For example, Courts have generally certified class actions under Rule 23(b)(1) and (2) in securities actions which present a claim for equitable relief, while Courts have usually relied on Rule 23(b)(3) to certify classes in securities actions which present a claim for money damages. *See Fox v. Prudent Resources Trust*, 69 F.R.D. 74 (E.D.Pa.1975). Although these general class action principles tend to support a plaintiff's right to assert his own individual claims, courts are sometimes called upon to balance these rights against the practical consequences of allowing parties to opt out of a securities class action.

Class actions certified under Rule 23(b)(3) are generally based on a finding that an action presents questions of law and fact which predominate over questions affecting individual class members. Since many large securities fraud cases involve some type of large investment scheme or misleading statement, most securities fraud class actions are easily certifiable under the general provision of Rule 23(b)(3). Rule 23(b)(1) and (2), however, were created to address specific instances where allowing class plaintiffs to opt out of class litigation presents special problems. *See Parish v. Boetel & Co.*, 60 F.R.D. 680 (D.Neb.1975); *Cook Investment Co. v. Harvey*, 20 F.R. Serv. 612 (N.D.Ohio 1975). Moreover, a review of both subdivisions shows that a binding class action may be particularly applicable to the facts of this case.

In spite of the variety of contentions presented by several counsel against defendants who have been and who may be sued, the basic thrusts of each are similar. There is no need to permit the investors to forfeit even more money by incurring the expense of multiple and duplicative actions and, to the extent I can legally avoid such a result, I propose to do so.

Rule 23(b)(1) states that a court can certify a binding class action when

"(1) the prosecution of separate action by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;"

An examination of the Advisory Notes following Rule 23 discloses the intended operation of subdivision (b)(1)(A) and (B) and indicates that Rule 23(b)(1) clearly addresses some of the questions presented by the Greenman litigation. The Advisory Notes following Clause A, for example, suggest that a Rule 23(b)(1) class action should be employed if individual suits would present the danger of inconsistent or varied adjudications; for the end result of such adjudications may require that future defendants or plaintiffs take different positions when opposing each action.

"One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct. The class action device can be used effectively to obviate the actual or virtual dilemma which would thus confront the party opposing the class."

In addition, the Notes following Clause (B) state that a court can certify a class under Rule 23(b)(1)(B) in situations

"... where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other member might do so as a practical matter."

Both problems are clearly presented by the instant litigation. Each person who invested in the Greenman Short Term Trading Program invested his or her funds directly or indirectly through Dennis Greenman—who in turn invested or caused to be invested some of these funds through brokerage houses. As a result, all of the investors became involved in one fashion or another in the same fraud scheme and, to the extent they sustained losses, share causes of actions against identical defendants. If this Court were to allow any of these investors to opt out of a plaintiff-investor class and maintain their own non-class actions, any of their individual judgments might adversely affect actions taken by plaintiff class members, especially if individual investors have in some way acted in conjunction with Mr. Greenman (*e.g.*, offensive use of the doctrine of collateral estoppel or res judicata). Therefore, in order to bring a subsequent action, defendants or plaintiffs may be required to develop inconsistent claims and defenses. Conversely, an initial judgment for plaintiff class members may have an effect on actions by individual plaintiff investors (those who have chosen not to participate in 23(b)(3) class action).

Special consideration should also be given to the language and purpose of (b)(1)(B) which refers to:

"adjudications with respect to individual members of the class which would as a practical matter ... substantially impair or impede their ability to protect their interests ...."

At issue are amounts which may exceed thirty million dollars. It is the intent of this Court to attempt, within the limits permitted by the law and the facts to protect *all* investors in connection with any judgment or judgments which may be re-

covered. It is no answer to speculate as to the viability of sources of recovery and the probability or improbability of recovery against any particular source. What is important, however, is to protect whatever fund may be recovered from the possibility of disparate and inequitable dispensation, thus impairing the class members' ". . . ability to protect their interests . . . ." (Rule 23, supra).

Another important facet of the "interests" of the investor class is the spectre of huge attorneys fees resulting from multiple actions, and the enthusiasm of some to turn this litigation into something it should not be. The receiver's efforts have produced a large fund, part of which has been distributed. More will be. This fund, however, should be employed to support this litigation in as equitable a method as possible. I can discern no reason why the investors, many of whom have been hurt badly already, should now be required to expend additional hundreds of thousands of dollars to support a wave of lawsuits and the fertile imaginations of the attorneys whose individual tasks may draw them in different directions. A highly competent team of lawyer representatives will be appointed in this order. These include the receiver and several of the attorneys representing defrauded investors. Because I would view efforts of those, whose individual actions have been stayed, to separate and go in other directions, as not in the best interests of the class, we are proceeding as outlined hereafter.

Additionally, this Court notes other practical problems presented by allowing individual investors to opt out of a plaintiff class. First, there are a large number of possible plaintiffs who seek a total judgment well in excess of thirty million and, indeed over fifty million dollars from a limited number of defendants. As a result, individual investor actions outside those who are included as class members, would necessarily burden the judicial system by compelling this court to relitigate in large part identical issues of fact and law. Second, many investor claims may be so closely intertwined with those of other investors that it may also be necessary to include them in different aspects of a class action (e.g., family investors and alleged co-conspirators). Third, and as alluded to above, it is possible that a successful plaintiff class action may only provide a limited recovery for the class, thus, as a practical matter, foreclosing recovery for non-class plaintiffs. See Advisory Notes to Rule 23 at 49. Finally, it can be argued that a class action which meets the general requirements of Rule 23(b)(3) and 23(b)(1) should be certified under the more restrictive provisions of subdivision (1), for to do otherwise would defeat the objectives of the latter provision. See Van Gemert, id.

In sum, this Court is faced with a choice. It can certify a class action under Rule 23(b)(3) and follow the lead of a number of cases which allow individual plaintiffs to be excused from a non-equitable securities class action, or it can certify a class action under Rule 23(b)(1) and include all possible plaintiff investors in future Greenman litigation.

Therefore, in light of the special facts presented in the instant case, this Court chooses to follow the words of Robert Frost who said:

"Two roads diverged in a wood, and I—I took the one less traveled by . . . ."[1]

This cause will proceed under Rule 23(b)(1).

ORDERED AND ADJUDGED:

## I. ORDER OF CONSOLIDATION AND CLASS CERTIFICATION

The following civil actions are hereby consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. The actions hereby consolidated, and those of a like nature which hereinafter will be consolidated, will be collectively referred to as the "Dennis Greenman Securities Litigation."

*Harry Pure, et al., v. Paine, Webber, Jackson and Curtis, Inc., et al.,* No. 81–1539–CIV–WMH

---

1. R. Frost, The Road Not Taken, in Complete Poems of Robert Frost (1970).

*Hugo L. Black, Jr., Receiver for Barclay Financial Corp., v. Dennis Greenman, et al.,* No. 81–708–A2–CIV–WMH

*Van C. Wilks, et al., v. A. G. Becker, et al.,* No. 81–1172–CIV–WMH

*Evan Regas Associates, Ltd., a Florida limited partnership v. A. G. Becker, et al.,* No. 81–1173–CIV–WMH

*W. T. Green, Jr., et al., v. A. G. Becker, Inc., et al.,* No. 81–1174–CIV–WMH

*Bryan Smith and Margaret Smith Revocable Trust Fund of the State of Arizona, et al.,* No. 81–1175–CIV–WMH

*Don Conduff, et al., v. A. G. Becker, et al.,* No. 81–1176–CIV–WMH

*Norman Norwood, et al., v. A. G. Becker, et al.,* No. 81–1177–CIV–WMH

*Benno Bauer, et al., v. A. G. Becker, Inc., et al.,* No. 81–1178–CIV–WMH

*Wendell Lott Associates, Ltd., a Florida limited partnership v. A. G. Becker, et al.,* No. 81–1179–CIV–WMH

*Totten Group, Ltd., a Florida limited partnership v. A. G. Becker, et al.,* No. 81–1180–CIV–WMH

*A & O Builders, Inc., of Duval County, a Florida corporation, v. A. G. Becker, et al.,* No. 81–1181–CIV–WMH

*Lynwood A. Maddox v. A. G. Becker, et al.,* No. 81–1182–CIV–WMH

*Glen Norwood, et al., v. A. G. Becker, et al.,* No. 81–1183–CIV–WMH

*Metropolitan Bank & Trust Company of Tampa, v. Dennis E. Greenman, et al.,* No. 81–2743–CIV–WMH

*H. B. "Red" Jackson, et al., v. A. G. Becker, et al.,* No. 81–1184–CIV–WMH

*Sam Rudd, et al., v. A. G. Becker, Inc., et al.,* No. 81–1185–CIV–WMH

*River City Associates, Ltd., a Florida limited partnership v. A. G. Becker, et al.,* No. 81–1186–CIV–WMH

*Norma Kirby v. A. G. Becker, et al.,* No. 81–1203–CIV–WMH

*C L & H Enterprises, Inc., a Florida corporation v. A. G. Becker, Inc., et al.,* No. 81–1204–CIV–WMH

*John S. Hulsberg and Jane L. Hulsberg v. A. G. Becker, Inc., et al.,* No. 81–1205–CIV–WMH

*Baer, et al., v. Dennis Greenman, et al.,* No. 82–204–CIV–WMH

*Sedgeley Investments, Ltd., et al., v. Dennis Greenman, et al.,* No. 82–62–CIV–WMH

*Arthur Jacowitz Insurance Agency, Inc., v. Dennis Greenman, et al.,* No. 82–12–CIV–WMH

*Jack Schillinger and Marjorie Schillinger, et al., v. Dennis Greenman, et al.,* No. 82–330–CIV–WMH

The aforementioned consolidated actions are stayed and all plaintiffs in these actions, other such actions later filed in this Court and any other such actions filed elsewhere, shall become members of the class in the action now filed pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure. Said class shall consist of:

> All persons who have invested money with Dennis Greenman or invested money through the Greenman "Short-Term Trading Program" or "Special Arbitrage Program," during the time Dennis Greenman was employed by Paine, Webber, Barclay Financial Corp., or any other investment firm.

In addition, all class members are hereby directed to advise the Court of any and all actions pending in any other jurisdiction, and said class members are further stayed from pursuing these actions pending resolution of the matters in this case.

## II. MASTER DOCKET AND SEPARATE ACTION DOCKETS

While it is anticipated that pleadings in the consolidated actions will, in view of this order, be minimal, a master docket is hereby established for the class action pre-trial and proceedings in all of the actions consolidated herein and in all other cases filed in or transferred to this Court and consolidated herewith for pre-trial purposes. Entries in said master docket shall be applicable to all consolidated actions and the class action as more fully set forth below. Separate dockets shall also be maintained for each of these consolidated actions, and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this order.

B. When a pleading is filed pursuant to Section VI, *infra,* the clerk shall file such pleading in the master file and note such filing in the master docket. Where the pleading refers specifically to one of the consolidated actions stayed by this order, the Clerk shall also make an appropriate docket entry as to that file and place a copy of the pleading in the specific file. No further copies need be filed or docket entries made.

### III. MASTER FILE

A master file is hereby established for the class action pre-trial proceedings. The master file shall be Civil Action No. 81–708–A1–CIV–WMH. The original of this order shall be filed by the Clerk in the master file herein established.

### IV. NEWLY FILED OR TRANSFER-RED ACTIONS

When a civil action related to the *Dennis Greenman Securities Litigation* is hereafter filed in this Court or transferred here from another Court, the Clerk of this Court shall:

(a) file a copy of this order in the separate file for such action;

(b) send notice of the action to counsel for class and defendants in the class action filed pursuant to this order;

(c) make an appropriate entry in the master class action docket;

(d) mail to the attorney for the plaintiff in the newly filed or transferred case a copy of this order;

(e) upon the first appearance of any new defendant(s) mail to the attorneys for the defendant(s) in such newly filed or transferred case a copy of this order.

The Court requests the assistance of counsel in calling the attention of the Clerk of this Court to the filing or transfer of any case in which the parties might properly be a part of the class action, for pre-trial and trial purposes as a part of the *Dennis Greenman Securities Litigation.*

### V. CAPTIONS OF CASES

Every pleading filed in this class action or in any separate action related thereto shall bear the following caption:

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| IN RE: DENNIS GREENMAN SECURITIES LITIGATION | : | MASTER FILE NO: 81–708 A1–CIV–WMH |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |

### VI. FILING AND DOCKETING

When a paper is filed with the caption, pursuant to Section V above, the Clerk shall file such paper in the master file and note such filing in the master docket.

### VII. RULES OF PROCEDURE

A. Except as otherwise provided herein or by further order of Court, the Federal Rules of Civil Procedure and the local rules of the Southern District of Florida shall govern all further proceedings herein.

B. Rules 10 subd. B and 10 subd. J(1) of the Local Rules of Civil Procedure for the Southern District of Florida are hereby modified as follows:

All uncontested motions shall be accompanied by certificate of counsel that such motion is uncontested. All contested motions shall be accompanied by a brief or memorandum of law containing a concise statement of the legal contentions and authorities relied upon in support of said motion. On all contested motions the

parties shall endeavor to agree upon a briefing schedule, subject to the approval of the Court. In the absence of such agreement or order of the court, the following schedule shall apply. The opposing parties shall have twenty (20) days from date of service to file a brief or memorandum in opposition thereto. The moving party shall have ten (10) days from service to file a reply brief. Oral argument shall be dispensed with unless specifically requested by an interested party. In any case, the Court may decline to hear oral argument, and may dispose of such motion without further hearing or argument.

## VIII. ADMISSION OF ATTORNEYS

Each attorney not a member of the bar of this Court who is acting as counsel for a plaintiff or a defendant herein shall be deemed admitted *pro hac vice* to practice before this Court in connection with these proceedings.

## IX. THE PROSECUTION OF CLAIMS BY CLASS COUNSEL

A. The plaintiffs' counsel appointed by the Court are hereby authorized and directed to prosecute all claims belonging to the estate of Barclay[2] and all claims arguably belonging to public investor customers of Barclay for restitution of traceable assets withdrawn from or paid by Barclay. The claims assigned to the Receiver for prosecution include the following:

(1) All those claims asserted in the Receiver's Motion for Turnover of Trust Funds and to Produce Financial Records, dated April 29, 1981, in Case No. 81–708–A1–CIV–WMH, styled *Black, Receiver v. Greenman, et al.*

Claims for funds wired from A. G. Becker to various bank accounts, which funds are alleged to be trust funds belonging to Barclay.

(2) All those claims asserted in the Receiver's Ancillary Complaint for Constructive Trust, Injunctive Relief and Requiring the Turnover of Property, filed May 1, 1981, in Case No. 81–708–A1–CIV–WMH, styled *Black, Receiver v. Greenman, et al.*

Claims for funds withdrawn from the Short Term Trading Program by Jane Greenman in October, 1980; and by others in the period of January-March 1981.

B. The plaintiffs' committee is also directed and authorized to prosecute all claims belonging to the public investors asserted against defendants, Paine Webber, A. G. Becker, Barclay Financial Corporation, and Dennis Greenman [except claims against Greenman alleging conversion or diversion of traceable assets, which claims fall within ¶ A, above], and others based on fraud, constructive fraud, violation of federal or state securities laws, violation of rules of self-regulatory organizations, or negligence. Such claims include, by way of example and not limitation, the following:

(1) All those claims asserted in any of the consolidated actions against any or all of the following defendants based on alleged violations of the securities laws of the United States, 15 U.S.C. §§ 77a et seq.:

Dennis Greenman

Barclay Financial Corporation

Paine Webber Jackson & Curtis, Inc.

A. G. Becker, Inc.

Merrill Lynch Pierce Fenner & Smith, Inc.

Aetna Casualty & Surety, Inc.

Robert L. Ferman

Richard H. Sacks

(2) All those claims asserted in any of the consolidated actions against any or all of the following defendants based on alleged violations of the securities laws of the State of Florida:

Dennis Greenman

Barclay Financial Corp.

Paine Webber Jackson & Curtis, Inc.

A. G. Becker, Inc.

Merrill Lynch Pierce Fenner & Smith, Inc.

Aetna Casualty & Surety, Inc.

Robert L. Ferman

2. Claims growing out of the "588" accounts formerly handled by Dennis Greenman.

Richard H. Sacks

(3) All those claims asserted in any of the consolidated actions against any or all of the following defendants based on alleged violations of the New York Stock Exchange or the National Association of Securities Dealers:

Dennis Greenman
Barclay Financial Corp.
Paine Webber Jackson & Curtis, Inc.
A. G. Becker, Inc.
Merrill Lynch Pierce Fenner & Smith, Inc.
Aetna Casualty & Surety, Inc.
Robert L. Ferman
Richard H. Sacks

(4) All those claims asserted in any of the consolidated actions against any or all of the following defendants based on alleged common law negligence, common law fraud, common law constructive fraud, or common law breach of fiduciary duty:

Dennis Greenman
Barclay Financial Corp.
Paine Webber Jackson & Curtis, Inc.
A. G. Becker, Inc.
Merrill Lynch Pierce Fenner & Smith, Inc.
Aetna Casualty & Surety, Inc.
Robert L. Ferman
Richard H. Sacks

## X. ORGANIZATION OF COUNSEL

A. Organization of Plaintiffs' Counsel

1. *Scope of this Order.* The organizational structure established by this order shall include and govern all counsel in all actions, whether brought as class actions or as individual actions, except as otherwise indicated.

2. *Committee of Plaintiffs' Counsel.* Collectively, the following attorneys shall represent the interests of the plaintiff class—throughout the Dennis Greenman Securities Litigation. These attorneys shall hereinafter be referred to as the "Plaintiffs' Committee." They shall have ultimate authority for conducting the pre-trial and trial activities for the plaintiff class. In addi-

tion, Plaintiffs' Committee shall be divided into two sections.

I. *Steering Committee*

The attorneys appointed to the Steering Committee are empowered to plan and conduct the overall course of the plaintiffs' class litigation and coordinate the activities of Plaintiffs' Advisory Committee, when such coordination is indicated.

The attorneys appointed to the Steering Committee are:

Hugo L. Black, Jr., Esq.
Mark Hicks, Esq.
James Glass, Esq.
Thomas Tew, Esq.
Alan G. Greer, Esq.

The Court hereby appoints Hugo L. Black, Jr., as lead counsel. He should provide general supervision and direction to the activities of plaintiffs' counsel, and is expected to maintain communication and promote harmonious dealings among all of Plaintiffs' Steering Committee.

Lead counsel shall execute the orders of the Court concerning the conduct of the litigation; receive, formulate and draft material for the plaintiffs, including material such as interrogatories, pleadings, motion papers, and the like; initiate and supervise discovery efforts of the plaintiffs; and initiate proceedings in Court, proceedings outside of Court, and all negotiations with defendants.

Lead Counsel shall delegate to other members of the Steering Committee of Plaintiffs' Counsel such of the foregoing tasks and responsibilities as shall be fair and practicable; but the Committee of Counsel shall remain ultimately responsible for such matters.

Lead Counsel shall act as spokesman for Plaintiffs' Steering Committee in all matters unless such task is otherwise designated. This does not derogate from the right of other committee counsel to be heard on matters arising where *genuine* and *substantial* disagreement exists among plaintiffs' counsel. The Court disfavors the presentation of cumulative views or views that dif-

fer from Lead Counsel in only minor and petty ways.

Lead Counsel shall preside over meetings of the Steering Committee of Plaintiffs' Counsel and supervise the overall activity of the Committee. He shall appoint the members of all other subcommittees, subject to the disapproval of a *majority* of Steering Committee members.

It is expected by the Court that the Chairman of the Plaintiffs' Committee will cooperate fully with the other members of the Committee and they likewise; that the considerable talents of each of Committee counsel will be employed in preparation without unnecessary duplication of effort and that all of Committee counsel will direct their efforts to conservation of the fund and the elimination of unnecessary fees insofar as is reasonably possible. However, lest the above be misinterpreted, the Committee is to prosecute this class action fully and deliberately and to make every effort to secure a just result.

In the event of important policy differences arising between or among members of Plaintiffs' Committee, a vote of the majority will prevail. As much as possible, the Court desires to remain distant from the internal activities of the Plaintiffs' Committee. However, it is in the nature of actions of this type that the Court exercise careful supervision over its progress. Therefore, in the event of serious conflict between members of Plaintiffs' Committee or in the event a Committee member refuses to abide by majority action, the Court will hear, on an emergency basis, such matters as may be brought to its attention. It is hoped such hearings will be unnecessary.

## II. *Advisory Committee*

All remaining attorneys of record are appointed to the Advisory Committee. They are empowered, if requested, to advise the Plaintiffs' Steering Committee on litigation strategy, to aid in the preparation of briefs and motions, and in any event, to participate in discovery only as set forth hereafter and only when requested.

3. *Procedure in the Event of Disagreement.* The Court expects that the organizational structure being created will facilitate and expedite the pre-trial processing of this litigation. If there is substantial disagreement among advisory counsel on any matter, Lead Counsel upon advice shall consult with the Steering Committee of Plaintiffs' Counsel, which shall act in what it believes to be in the best interests of all Plaintiffs' counsel. The resolution of such disagreement shall be by majority vote. All votes of the Committee of Counsel may be made in person or by proxy. Plaintiffs' Advisory Counsel in the stayed consolidated actions shall follow the recommendations of the Steering Committee and shall not take contrary action. Those Advisory Counsel, however, who disagree with the Steering Committee's recommendation may jointly or individually present their dispute to the Court who will take the matter under advisement; but unless the Court overrules the Committee, the decision of the Committee shall govern.

## C. *Liaison Duties*

Plaintiffs' Committee shall maintain lists of Plaintiffs' Class and their addresses and lists of Advisory Counsel and their addresses. The Committee will be responsible for receiving and distributing to all counsel and class members all notices, orders, and other communications from the Court as are appropriate for distribution. They shall keep complete files of all material thus received, and they will make that material available for inspection.

## XI. COORDINATION OF PRE–TRIAL PROCEEDINGS

Plaintiffs' Steering Committee, Lead Counsel for plaintiffs, and Defendants' Counsel, are together charged with the responsibility for coordinating discovery and other pre-trial proceedings in order to simplify and expedite the litigation, avoid duplication of effort and reduce the burden of the litigation on the parties and the Court. Moreover, designated class committee counsel and defendants' counsel shall confer

from time to time to promote the coordination of these pre-trial proceedings.

## XII. ESTABLISHMENT OF DOCUMENT DEPOSITORY

The parties shall establish a joint documentary depository in Miami, Florida, at such location as the parties may agree upon. In the absence of agreement, the court upon motion shall designate such location. The general expenses of the depository including rent, staffing, etc., shall be divided into two equal portions to be borne by the plaintiffs' class and defendants collectively. Specific expenses of the depository, such as copying expenses, shall be borne by the party incurring them. All documents produced by any party or witness pursuant to request, subpoena or otherwise in connection with this litigation shall be placed in the depository, and not removed therefrom without further order of the Court. Any party producing documents shall control number each page before depositing such documents in the depository; and the parties shall agree upon a plan for control numbering documents produced by third party witnesses.

Counsel appearing for any party in this case and the staffs of their respective law firms shall have reasonable access during business hours to each document in the depository and may copy or obtain copies at the inspecting party's expense. Such inspection shall not be subject to monitoring by any party nor shall any document be removed from the depository without an order of the Court. After the initial deposit of documents in the document depository, all subsequent deposits shall be made only upon notice to the liaison counsel of the opposite side. Liaison counsel for this purpose shall be appointed by Plaintiffs' Steering Committee and Defense Counsel.

On or before June 1, 1982, each defendant shall place in the document depository copies of all documents concerning the subject matter of this litigation produced by it in response to formal or informal requests of the United States Department of Justice, the United States Securities and Exchange Commission, or any other state or federal agency, or in response to grand jury subpoenas, including copies of documents produced by officers, employees, and agents of the defendants, and documents produced by others, in the defendants' custody or control. Each defendant shall identify those documents produced by it in response to such request or subpoenas, copies of which were not retained by such defendant. On or before the same date, each plaintiff shall place in the depository copies of all documents evidencing or relating to any investment by him or her in the Greenman Short Term Trading Program, and any withdrawals of funds therefrom.

## XII. PRESERVATION OF DOCUMENTS

During the pendency of this litigation, each of the parties herein, their respective officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, are restrained and enjoined from destroying or causing the destruction of, or permitting the destruction of, any arguably relevant documents or other arguably relevant items now existing, except upon prior approval of the court obtained by application showing cause, therefor, with notice to all other parties of such application, providing them an opportunity to be heard by the Court as to the merits of the application. For the purposes of this paragraph, the phrase "permitting the destruction of" refers to documents under any party's care, custody or control. Furthermore, for the purposes of this paragraph, the phrase "any relevant document or other relevant item" shall be deemed to include any writing, drawing, film, graph, chart, photograph, phonorecords, tape records, or other graphic matter of any kind or nature, and all mechanical and electronic sound recordings, or transcripts thereof, any retrievable data whether carded, taped, coded, electrostatically, electromagnetically, or otherwise, and other data compilations from which information can be obtained and which ar-

guably relates or is relevant to any issue raised by the pleadings in these actions. Counsel for plaintiffs' class and defendants are directed to meet as may be necessary and attempt to determine documents or categories of documents which need not be preserved pursuant to this paragraph. If counsel are unable to agree, any party may apply to the court for relief from this order upon reasonable notice. Any document or other item described or referred to in any discovery request hereafter made by any party to another party herein shall be preserved unless or until an order is entered vacating or denying such discovery request.

## XIV. CONFIDENTIALITY OF DOCUMENTS OR INFORMATION PROTECTIVE ORDER

All discovery shall be used solely for the prosecution or defense of these coordinated actions. Any party producing documents or information pursuant to this order or pursuant to discovery herein may designate the following types thereof as confidential, subject to the provisions of this order:

Documents containing bona fide trade secrets

Documents containing genuinely sensitive and secret financial information

Documents reflecting information which the producing party is obligated to keep confidential

Documents or information (including testimony) submitted to the United States pursuant to grand jury subpoena

Documents shall be designated as confidential by marking each such document as follows:

### CONFIDENTIAL

Pursuant to Court Order in the Dennis Greenman Securities Litigation U. S. Dist. Court, S.D. Florida

Unless and until otherwise ordered by the Court, documents and information designated as confidential may be inspected only by attorneys of record for the parties herein, the staffs of their respective law firms working on these cases, experts retained by the parties, and by attorneys in the employ of a party who appear as counsel of record in these cases. No other person shall have access to a document or information which is designated as confidential without approval of the Court, nor shall any such other person be informed of such documents or information contained therein by any person having access thereto. Nothing contained in this order shall prevent the use of documents or information designated as confidential at trial or at depositions, with appropriate safeguards. If such documents or information are used in depositions, such documents or information and all portions of the transcripts of such depositions and exhibits thereto which refer or relate to such documents or information, shall be treated as confidential. No documents or information designated as confidential shall be filed with any court without appropriate safeguards.

## XV. DISCOVERY

The following orders shall govern all discovery taken in this matter after the date of this order:

1. All interrogatories, document requests, requests for admissions, and deposition notices shall be filed by plaintiffs through Lead Counsel, or as is otherwise agreed by the Plaintiffs' Steering Committee.

The provisions of Paragraph XIII of this order, requiring coordination among plaintiffs and defendants, apply specifically to this paragraph of this order.

2. One copy of each deposition transcript, together with a copy of the exhibits marked at such deposition, shall be kept in the document depository, plaintiffs and defendants respectively to bear in equal proportions the expense of copying such transcripts and exhibits for the depository.

3. The Court will be available to resolve promptly any discovery disputes that may arise during the course of depositions. In the first instance, the parties are directed to negotiate such disputes in good faith, to eliminate the necessity of burdening the Court. However, the Court recognizes that

there may be some instances where the parties may look to the Court to resolve discovery disputes. The Court, therefore, suggests a number of methods for resolving such questions.

(a) In the event agreement cannot be reached after negotiation, any party seeking a ruling from the Court shall arrange with the court's law clerk a telephone conference call at the Court's earliest convenience. Facilities shall be provided so that all counsel attending the deposition and the deposition reporter can hear the proceedings. The deposition reporter shall make a transcript of the conference call proceedings, which shall be included in the deposition transcript. During such proceedings, all counsel present shall have the opportunity to argue fully to the Court and the Court will, whenever possible, resolve the dispute during the conference call proceedings. In the event the Court is unavailable by telephone to resolve disputes arising during the course of a deposition, the deposition shall nevertheless continue to be taken as to.matters not in dispute.

(b) In the event that parties plan to take a battery of depositions at a given time and location, and expect that discovery shall require frequent rulings by the Court, the parties may request that the Court be present at specific depositions provided the Court receives ample notice of discovery time and location.

4. Plaintiffs' Lead Counsel, or agreed designee, and Defendants' Counsel shall confer and, if possible, agree upon the identity of the witnesses whose depositions must be taken in this litigation and the schedule for the taking of such depositions. On or before May 30, 1982, such counsel shall submit to the Court either an agreed list and schedule of depositions, or respectively each group's proposed list and schedule of depositions accompanied by a memorandum setting forth why each deposition is necessary, and why agreement could not be reached with respect to it.

5. Each deposition shall commence at 9:30 a. m., on the date for which it is noticed. The depositions shall continue thereafter daily (excluding weekends and holidays, national and religious) except as otherwise may be agreed by counsel then present at the particular deposition, subject to adjournment as provided in paragraphs 9, 10, and 11 hereof following conclusion of the initial sequence of interrogation provided for in paragraph 8 hereof. The completion of a deposition or of the initial sequence of interrogation of any party or witness is not a condition precedent to the commencement of the deposition of any other party or witness. Counsel participating in these depositions are directed to cooperate with one another by agreeing to such adjournments and adjourned dates as may be reasonable and to endeavor to complete the depositions as expeditiously as possible.

6. Copies of all documents produced by or on behalf of the witness in connection with his deposition shall be filed at the Miami document depository, the cost of copying such documents for the depository to be divided equally among plaintiffs and defendants. If because of the volume or nature of the documents produced, and if counsel for each side so agree, a complete description of the documents produced, including each category of such documents, may be placed in the depository with the deposition in lieu of actual copies of the documents.

7. The party introducing an exhibit during the course of a deposition shall provide two copies of each exhibit to opposing counsel at the time the exhibit is marked for identification.

8. Questioning at the depositions to be taken on behalf of plaintiffs shall be conducted in the following sequence:

(a) designee of plaintiffs' Lead Counsel;

(b) other plaintiffs' counsel present, if requested by Plaintiffs' Committee;

(c) initial defendants' counsel;

(d) all other defendants' counsel present; and then repeating. Questioning upon the depositions to be taken on behalf of a defendant shall be conducted in the following sequence:

(a) initial defendants' counsel (as named in pleadings unless otherwise agreed upon);

(b) all other defendants' counsel present;

(c) designee of Plaintiffs' Lead Counsel;

(d) other plaintiffs' counsel present; if requested by Plaintiffs' Committee;

and then repeating.

Any disputes regarding duplicative questions shall be resolved by the Court upon recommendation of Lead Counsel.

9. Upon completion of the initial sequence of interrogation of each of the designated parties or witnesses, the deposition of the party or witness if not completed, shall be adjourned to a date not less than thirty days subsequent thereto or as otherwise agreed.

10. The depositions of each of the designated parties and witnesses shall be transcribed promptly. A copy of the transcript of each deposition shall be filed at the document depository. The basic reporter's charge for the original and copy (or two copies if required by the reporter) of the transcripts shall be prorated between plaintiffs and defendants, according to the portions of the transcript bearing plaintiffs' and defendants' examination. Counsel shall be permitted to tape record deposition proceedings if they so desire, provided all counsel are present and the person being deposed is advised that the recording is being made.

11. All deposition transcripts which contain testimony which any party deems "Confidential," or in which deposition exhibits designated "Confidential" are referred to or attached, shall be designated "Confidential" by the party who seeks protection of such materials from the public domain. In the event a deposition transcript is designated "Confidential" by any party, it shall be filed under seal.

## XV. CONCLUSION

The Plaintiffs' Committee has been directed to meet as soon as possible in order to draft a comprehensive class complaint. Said complaint should include all claims and issues common to the class and should be submitted to this Court within fourteen (14) days.

In addition, the proposed agenda for the "Dennis Greenman Securities Litigation" is as follows:

1. *First Pre-Trial Conference*

A. Ruling on previously requested discovery motions.

B. Setting time for the completion of first wave of discovery.

C. Setting parameters for discovery on merits of the case;

(1) setting a timetable for the production of documents and evidence relating to issues involved in establishing defendants' liability.

(2) setting a threshold date after which material is deemed non-discoverable.

D. Hearing requests for early disclosure re: use of expert testimony and opinion evidence.

2. *Second Pre-Trial Conference*

A. Setting final time schedule for completion of discovery.

B. Discussing the possible appointment of a special master or magistrate to supervise discovery.

C. Setting schedules for filing final pretrial briefs, lists of witnesses, etc.,

D. Appointing any necessary court experts.

E. Discussing possible stipulations.

F. Setting date for final conference.

3. *Final Pre-Trial Conference*

A. Reviewing pre-trial briefs.

B. Clarifying undetermined issues of fact and law.

C. Discussing the possibility of holding separate trials for separate groups of investors, e.g., various classes of investor interests.

D. Final rulings on objections to proof or evidence (documentary).

E. Ruling on motions for sanctions and preclusion.

F. Setting limits on time of proof.

G. Considering jury issues.

H. Considering the conduct and scope of voir dire.

I. Discussing special provisions for the conduct of the trial including scheduling and basic agenda.

J. Considering proposed jury instructions and issues of fact and law.

K. Considering settlement possibilities.

4. *Trial*

Trial is hereby set for the two-week period beginning November 1, 1982, beginning at 9:30 a. m., in Courtroom II, U. S. District Court, Miami, Florida.