829 F.2d 1539
 Fed. Sec. L. Rep. P 93,500, 9 Fed.R.Serv.3d 415
 In re DENNIS GREENMAN SECURITIES LITIGATION.
Leon NAMOFF, Sara Johnson, et al., Plaintiffs-Appellees,
Dr. Hyman Baer, Bill Behrle Associates, et al., Plaintiffs-Appellants,
v.
MERRILL LYNCH, PIERCE, FENNER AND SMITH, etc., et al.,
Defendants-Appellees.
 No. 85-5690.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 19, 1987.
 
 Michael R. Klein, Washington, D.C., for plaintiffs-appellants.
 Martin Paul Unger, Carlton R. Asher, Jr., New York City, for Paine Webber, Jackson & Curtis, Inc.
 Jeffrey M. Weissman, Miami, Fla., for Sanford, Freida & Neil Hotchner, Hotchco, Inc.
 Paul W. Stivers, Phillip S. McKinney, Atlanta, Ga., for Merrill Lynch, Pierce & Fenner.
 Lawrence R. Metsch, Miami, Fla., for Dennis and Jayne Greeman.
 Robert A. Meister, New York City, for Arthur May and Penny May.
 Jeffrey M. Smith, Karen B. Bragman, Atlanta, Ga., for Jonathan Reisman, Baron L. Bartlett and W. Crosby Few.
 R. Earl Welbaum, Miami, Fla., for U.S. Fire Ins. Co.
 Francis X. Sexton, Jr., Miami, Fla., for Bruce Paine, O. Roy Vass, Robert Punch.
 Jerome Murray, New York City, for Vigilante Ins. Co. & Firemen's Fund.
 Hugo L. Black, Thomas Tew, Alan G. Greer, James E. Glass, Mark Hicks, Elizabeth K. Clarke, Lynn M. Summers, Miami, Fla., for plaintiffs committee.
 Henry Minnerop, Brown and Wood, New York City, for Becker Paribas, Inc.
 Aaron Podhurst, Miami, Fla., for A.G. Becker, Inc., n/k/a Becker Paribas, Inc.
 Steven A. Werber, Jacksonville, Fla., for H. Preston Demery.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HILL and JOHNSON, Circuit Judges, and HENLEY*, Senior Circuit Judge.
 HENLEY, Senior Circuit Judge:
 
 
 1
 This is an appeal from a final district court judgment certifying a class action and approving a settlement in a complex securities fraud case. The plaintiffs are victims of a fraud perpetrated by Dennis Greenman, a securities seller. The defendants are brokerage firms that employed Greenman while he was conducting the fraud as well as others who might be liable for Greenman's actions. Appellants, some alleged victims of Greenman, contend that the district court erred in certifying the class for settlement purposes pursuant to Fed.R.Civ.P. 23(b)(1). For reasons to be stated, we reverse.
 
 
 2
 Greenman conducted the fraud over a period of almost four years beginning in mid-1977 as a broker for or associate of three different brokerage firms: Merrill Lynch, Pierce, Fenner & Smith Incorporated (Merrill Lynch), Paine Webber Jackson & Curtis, Inc. (Paine Webber), and Barclay Financial Corp. (Barclay). Greenman represented himself as operating a riskless, highly profitable computer-driven arbitrage system. In actuality, he was investing the funds in high risk options trading and lost substantial sums of money. Greenman also converted funds to his own use. He concealed the fraud by diverting the genuine account statements to false post office box addresses and forwarding fictitious account statements. Investors who sought to withdraw funds from their accounts were paid with other investors' funds in a "Ponzi" type scheme. Over 600 people participated in the scheme either dealing directly with Greenman or investing through other participants.[1] They invested approximately $86 million, of which they lost over $50 million.
 
 
 3
 In April of 1981, the Securities and Exchange Commission filed a complaint against Greenman, Barclay, and its principals seeking injunctive relief and the appointment of a receiver. The district court issued an injunction against Greenman and appointed a receiver to collect and distribute the investors' assets under the custody or control of Greenman, Barclay, or A.G. Becker.[2] The receiver found that the investors' funds were commingled to the extent that specific ownership could not be traced. In December of 1981, upon motion of the receiver and after a hearing, the district court issued an Order Approving Interim Distribution to Investors, which determined that the receiver should make his first interim distribution on an individual loss basis, and authorized the receiver to distribute up to 20% of each investor's "net principal investment" as defined in the claim. Upon motion of the receiver and after a hearing, the court ordered a second interim distribution of an additional 15% of the net investments of the investors as individuals in May of 1982. The total amount distributed from the receivership fund was $17,280,681.76, which represented a 35% return of net investments to investors with net losses.
 
 
 4
 Subsequent to the SEC's disclosure of the fraud, numerous suits were filed on behalf of investors. Among the suits, a complaint was filed on behalf of all people and entities who lost investments. The class action complaint named as defendants: Greenman, Paine Webber, Barclay, A.G. Becker, Inc., and various officers of Paine Webber and Barclay. The plaintiffs alleged violations of the Security Exchange Acts of 1933 and 1934, the Investment Company Act of 1940, the R.I.C.O. Act, various Florida statutes, the rules of the New York Stock Exchange and the National Association of Securities Dealers. In addition, plaintiffs alleged common law causes of action of fraudulent misrepresentation, concealment, nondisclosure, breach of fiduciary duty, conversion, and negligence. As relief, the plaintiffs sought their lost investments, the three-fold damage award provided for in the R.I.C.O. Act, punitive damages, interest, costs, and attorney fees.
 
 
 5
 After receiving advice from counsel and conducting hearings, the district court consolidated and stayed the individual suits and certified a class action pursuant to Fed.R.Civ.P. 23(b)(1). See In re Dennis Greenman Securities Litigation, 94 F.R.D. 273, 279 (S.D.Fla.1982). The district court ruled that the general class action prerequisites of Rule 23(a) were satisfied because of the large number of investors and the similarity of their claims. Id. at 276. In reaching its decision to certify the class pursuant to Rule 23(b)(1), the district court reasoned that the case's unique facts made the possibility of individual actions, as would be allowed under Rule 23(b)(3), undesirable. The district court observed that: (1) all investors were involved in the same fraud scheme and shared causes of action, id. at 277; (2) individual actions may cause both defendants and plaintiffs to develop inconsistent claims and defenses, id.; (3) class members' interests would best be protected by insuring that the receivership fund was used and distributed equitably, id. at 278; and (4) individual actions would result in huge attorney fees and burden the judicial system. Id.
 
 
 6
 After a year and a half of discovery, the parties began to seek a settlement. At the request of the plaintiffs and certain defendants, the district court participated in the settlement process pursuant to Fed.R.Civ.P. 16. The parties reached an agreement. Adherence to the agreement was conditioned upon the district court certifying a class action pursuant to Rule 23(b)(1). The district court certified a class for settlement purposes pursuant to Rule 23(b)(1) and approved the settlement. See In re Dennis Greenman Securities Litigation, 622 F.Supp. 1430, 1433 (S.D.Fla.1985).
 
 
 7
 In certifying the class, the district court again emphasized the special circumstances of the case. The court reasoned that the cohesion among the plaintiffs' claims caused each plaintiff's ability to recover to be intertwined with that of other plaintiffs. Id. at 1445. Specifically, the court expressed concern that plaintiffs, who brought their actions first, might bankrupt potential sources of recovery and, thereby, preclude recovery for those plaintiffs who brought later actions. Id. at 1447. In addition, the district court feared that individual actions would cause the defendants to face incompatible standards of conduct or create for them inconsistent adjudications. Id. at 1445. The court also noted that Rule 23(b)(1) certification would aid in equitably distributing the receivership fund. Id. at 1447. The court further recited several negative consequences that would result if the class was not certified pursuant to Rule 23(b)(1). Individual defendants would lose the ability to set off, against their investors' claims, the money they paid through the receivership fund to those who invested at other brokerage firms. Id. Individual actions would also create both burdens for the court and the prospect of enormous attorneys' fees. Id. at 1450. The court also expressed concern that by not certifying the class pursuant to Rule 23(b)(1), most plaintiffs would be deprived of the settlement they desire. Id. at 1447.
 
 
 8
 A group of plaintiffs, named the Baer plaintiffs, brought this appeal challenging the district court's class certification under Rule 23(b)(1). Appellants contend that the class should have been certified pursuant to Rule 23(b)(3) to allow class members to opt out.
 
 
 9
 Initially, we observe that appellants have not waived their right to object to the Rule 23(b)(1) certification by failing to appeal the district court's initial class certification decision. Orders certifying a class ordinarily are not appealable as final orders pursuant to 28 U.S.C. Sec. 1291. Williams v. City of New Orleans, 565 F.2d 874, 874-75 (5th Cir.1978); Link v. Mercedes-Benz of North America, Inc., 550 F.2d 860, 862 (3d Cir.), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); Hellerstein v. Mr. Steak, Inc., 531 F.2d 470, 472 (10th Cir.), cert. denied, 429 U.S. 823, 97 S.Ct. 75, 5 L.Ed.2d 85 (1976); Bennett v. Behring Corp., 525 F.2d 1202, 1202 (5th Cir.), cert. denied, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 798 (1976); Blackie v. Barrack, 524 F.2d 891, 900 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Such orders may become the subjects of interlocutory appeal. Indeed, to the extent that they involve injunctive relief or appointment of a receiver, the orders may be appealable pursuant to 28 U.S.C. Sec. 1292(a). Parties may also seek appellate review through a petition for a writ of mandamus pursuant to the All Writs Statute, 28 U.S.C. Sec. 1651. See In re Bendectin Products Liability Litigation, 749 F.2d 300, 303 (6th Cir.1984). However, parties should not be precluded from bringing an appeal upon the district court's entry of a final judgment merely because they neither sought an interlocutory appeal nor a writ of mandamus. Consequently, we hold that appellants should not now be precluded from obtaining appellate review.
 
 
 10
 Nor did appellants waive their right to appeal by virtue of their participation in the settlement process. In order to preserve an appeal from a class settlement, a class member must, during the course of proceedings, object to either the terms of the settlement, see Research Corp. v. Asgrow Seed Co., 425 F.2d 1059, 1060-61 (7th Cir.1970), or to the nature of the class certification. See, e.g., Howard v. McLucas, 82 F.2d 956, 961 (11th Cir.1986) (appellants' failure to seek an opt out provision at fairness hearing one reason for rejecting their challenge to consent decree). This does not mean that a party must abstain from the settlement process. Such a ruling would cause parties to make an unnecessary choice between seeking a reasonable accommodation with the other parties and gambling that the outcome of an appeal would be favorable to their position. Moreover, the prospect that a non-participant would appeal the settlement places undesirable pressures of uncertainty on the negotiating parties. However, it is appropriate to require that parties pursue their objections before the district court as a precondition for appeal. In this way, other parties would not be surprised and the district court would be afforded the opportunity to bring its expertise to bear on the alleged problem. We add that the district court of course is not required to disregard the effect of participation in the settlement process in reaching the certification decision.
 
 
 11
 Appellants in this case adequately pursued their objections to the class certification throughout the proceedings. The record shows that appellants on several occasions objected to the certification.
 
 
 12
 As indicated, the district court twice certified the class action. The second certification was for "settlement purposes." 622 F.Supp. at 1433. Despite the controversy surrounding this practice,[3] courts at times have certified a class temporarily for purposes of settlement.[4] See Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); In re Beef Industry Antitrust Litigation, 607 F.2d 167, 178 (5th Cir.1979), cert. denied, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981); Girsh v. Jepson, 521 F.2d 153, 155 n. 3 (3d Cir.1975); In re Baldwin-United Corp., 105 F.R.D. 475, 478 (S.D.N.Y.1984). In these cited cases, a class was not certified prior to the commencement of settlement discussions and the notice of class certification accompanied the notice of settlement. In reviewing settlement certifications, a special standard has been employed. See, e.g., Officers for Justice v. Civil Service Commission of San Francisco, 688 F.2d 615, 633 (9th Cir.1982), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983) ("[C]ertification issues raised by class action litigation that is resolved short of a decision on the merits must be viewed in a different light."); In re Chicken Antitrust Litigation, 560 F.Supp. 957, 960 (N.D.Ga.1980). Such review gives eye to protecting the plaintiffs' interests and preventing collusion between defendants and plaintiffs purportedly representing the class during negotiations. Particularly, in assessing the propriety of class certification, the courts evaluate the negotiation process and the settlement itself. See In re Beef Industry Antitrust Litigation, 607 F.2d at 176; Weinberger, 698 F.2d at 73.
 
 
 13
 However, despite the district court's depiction here, this case is meaningfully different from most of those involving settlement class certifications. The district court certified a class action prior to the commencement of settlement negotiations. The plaintiff class was represented during the negotiations by court approved representatives and the court itself participated in the settlement process. Consequently, we have no cause to employ a special standard in reviewing either certification decision.
 
 
 14
 Determination of the question whether a lawsuit may proceed as a class action is committed to the sound discretion of the district court, and its determination will not be overturned absent a showing that it has abused its discretion. Cox, 784 F.2d at 1553; Freeman v. Motor Convoy, Inc., 700 F.2d 1339, 1347 (11th Cir.1983). The district court twice certified the plaintiff class in this case pursuant to Rule 23(b)(1). It apparently did so the second time to satisfy the terms of the proposed settlement agreement. Except to satisfy the settlement agreement, there may well have been no need for a second certification. However, it was not reversible error for the district court to twice reach a certification decision. Nonetheless, the district court erred by certifying the class pursuant to Rule 23(b)(1).
 
 
 15
 A class must satisfy the requirements of one of the subsections to Rule 23(b).[5] We note that the propriety of certification under the various subsections is quite controversial and not well defined. At stake are the nature of the notice to be given to class members and their right to opt out from or refuse to be part of the class. Notice of options must be given only in the (b)(3) case. Fed.R.Civ.P. 23(c)(2). Members of a (b)(3) class, but not those of a (b)(1) class, may choose to opt out and not be bound by the judgment. Fed.R.Civ.P. 23(c)(3). These practical differences affect the ability of plaintiffs to bring class actions as well as their attractiveness to defendants. Applying the various subsections of Rule 23(b) requires a balance between an individual's due process rights and the judiciary's need to expedite the orderly resolution of conflict. See generally, Kennedy, Class Actions: the Right to Opt Out, 25 Ariz.L.Rev. 3 (1983).
 
 
 16
 We turn briefly to the applicability here of the Anti-Injunction Act which states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or when necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. Sec. 2283.
 
 
 17
 The district court in its initial certification order stayed all class members from pursuing actions pending in other jurisdictions. 94 F.R.D. at 279. The second certification, for mandatory class action settlement under Rule 23(b)(1), of necessity includes restraint of prosecution of other actions. Thus, it is clear that the certifications implicate the Anti-Injunction Act. It is clear also that there is a lack of judicial unanimity of opinion as to circumstances in which the Act bars certification of class actions. See In re Federal Skywalk Cases, 680 F.2d 1175 (8th Cir.), cert. denied sub nom. Stover v. Rau, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982); National City Lines, Inc. v. LLC Corp., 687 F.2d 1122, 1127 (8th Cir.1982); National City Lines, 687 F.2d at 1135 (Arnold, Circuit Judge, concurring in part and dissenting in part), as discussed in 622 F.Supp. 1430, 1448-50 & n. 15. While we might be inclined to hold the Act not a bar to class certification, here we decline affirmatively so to decide. As the district court noted "[n]o plaintiff class member who filed suit in a state court action objected to the 23(b)(1) settlement on the basis of the Anti-Injunction Statute or has sought leave to appeal that decision pursuant to 28 U.S.C. Sec. 1292(b)." 622 F.Supp. at 1449. The anti-injunction issue is not directly raised on appeal now, the Act is not jurisdictional, Smith v. Apple, 264 U.S. 274, 278-79, 44 S.Ct. 311, 313, 68 L.Ed. 678 (1924), and we prefer to base our decision on other grounds that are definitely before us.
 
 
 18
 The district court certified the class both under subpart (A) and (B) of Rule 23(b)(1). Rule 23(b)(1)(A) allows for certification for adjudications that might cause "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class...."
 
 
 19
 As a threshold consideration to certification under sub-part A, it must be ascertained that separate actions would result if the class was not certified pursuant to Rule 23(b)(1). Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir.1968);[6] 7A Wright, Miller & Kane, Federal Practice and Procedure Sec. 1773, p. 427 (1986). It is clear in this case that separate actions would be filed if the class was not certified pursuant to Rule 23(b)(1). At the time the district court first certified the class, twenty-five separate actions were pending. Indeed, the appellants bring this appeal for the purpose of prosecuting or being able to prosecute their own actions. Consequently, this threshold concern is satisfied.
 
 
 20
 The identity of judicial action that creates "inconsistent or varying adjudications" is not clear. Many courts confronting the issue have held that Rule 23(b)(1)(A) does not apply to actions seeking compensatory damages. See Zimmerman v. Bell, 800 F.2d 386, 389 (4th Cir.1986); Green v. Occidental Petroleum Corp., 541 F.2d 1335, 1340 n. 10 (9th Cir.1976); McDonnell Douglas Corp. v. United States District Court for the Central District of California, 523 F.2d 1083, 1086 (9th Cir.1975), cert. denied sub nom. Flanagan v. McDonnell Douglas Corp., 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); LaMar v. H & B Novelty & Loan Co., 489 F.2d 461, 466 (9th Cir.1973); see also Fraser, Kinds of Class Action Cases, 7 Okla.U.L.Rev. 1, 3 (1982). These courts reason that inconsistent standards for future conduct are not created because a defendant might be found liable to some plaintiffs and not to others. See In re Bendectin Products Liability Litigation, 749 F.2d at 305. Implicit in these decisions is the view that only actions seeking declaratory or injunctive relief can be certified under this section. See, e.g., Abramovitz v. Ahern, 96 F.R.D. 208, 215 (D.Conn.1982). Underlying is the concern that if compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3). See McDonnell Douglas, 523 F.2d at 1086.
 
 
 21
 Albeit reluctantly, we must agree. Although sound criticism exists for this interpretation,[7] the Advisory Committee Notes support the proposition that (b)(1)(A) certification is for cases seeking injunctive and declaratory relief. The relevant Note states that the section is proper in suits to invalidate a bond issue, to declare the rights and duties of riparian owners or landowners, or to abate a common nuisance. Advisory Committee Note to the 1966 Revision of Rule 23, 39 F.R.D. 69, 100 (1966). Since the plaintiffs sought compensatory damages, the district court erred by certifying the class pursuant to (b)(1)(A).[8]
 
 
 22
 Rule 23(b)(1)(B) provides for class certification where:
 
 
 23
 adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests....
 
 
 24
 The district court found that if separate cases were litigated "determination in the prior action would as a practical matter create a predisposition to a similar determination in a subsequent action." 622 F.Supp. at 1446.[9]
 
 
 25
 It is settled that the possibility that an action will have either precendential or stare decisis effect on later cases is not sufficient to satisfy Rule 23(b)(1)(B). Larionoff v. United States, 533 F.2d 1167, 1181 n. 36 (D.C.Cir.1976), aff'd, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); LaMar, 489 F.2d at 467; 7A Wright, Miller & Kane, Federal Practice and Procedure Sec. 1774 at p. 439. A contrary rule would enable any action, with the possibility that it might be one of multiple actions, to be certified pursuant to Rule 23(b)(1)(B). Consequently, the district court's finding that earlier decisions would create a "predisposition" for the determination of later actions standing alone is clearly not a sufficient basis for certification.
 
 
 26
 The district court also certified the settlement class pursuant to Rule 23(b)(1)(B) because a limited fund existed. Limited fund cases exist where a fund is insufficient to satisfy all of the claims against it. See Advisory Committee Note, 39 F.R.D. at 101; In re Bendectin Products Liability Litigation, 749 F.2d at 305-06; Green, 541 F.2d at 1340 n. 9. The district court found two bases for certification based on this theory. First, the district court relied on the existence of the receivership fund. 622 F.Supp. at 1447; 94 F.R.D. at 278. The court indicated that the fund had been and would be protected throughout the litigation and "that certification under Rule 23(b)(1) will aid in protecting, managing and equitably distributing this fund." 622 F.Supp. at 1447. We do not find this to be an adequate basis for certification. The district court doubtless stated correctly that the fund would be protected but that protection does not depend upon Rule 23(b)(1) certification. In addition, the district court did not indicate that the receivership fund initially was intended to be the sole source of recovery for plaintiffs. It is of no consequence that the receivership fund now contains settlement contributions. Consequently, the receivership fund is not a limited fund for purposes of Rule 23(b)(1).
 
 
 27
 The district court also found a limited fund on the basis that some investors may bankrupt potential sources of recovery. 622 F.Supp. at 1447. The court made no specific findings of the defendants' financial status. Absent such findings the district court could not properly rely on this ground for certification. See In re Bendectin Products Liability Litigation, 749 F.2d at 306; In re Northern District of California, Dalkon Shield IUD Products Liability Litigation, 693 F.2d 847, 852 (9th Cir.1982), cert. denied sub nom. A.H. Robins Co. v. Abed, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).
 
 
 28
 We certainly empathize with the district court's desire to bring this case to a just and not untimely end. However, the court took a road not well travelled. In so doing, it ignored Justice Jackson's admonition that "the mere fact that a path is a beaten one is a persuasive reason for following it." Jackson, Full Faith and Credit--The Lawyer's Clause of the Constitution, 45 Col.L.Rev. 1, 26 (1945). While the Congress might well consider forging additional courses to facilitate the expeditious and equitable management of complex cases such as this one, Rule 23, as written, does not support the district court's action.
 
 
 29
 Accordingly, we REVERSE the district court's judgment now under attack and REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit sitting by designation
 
 
 [1]
 Greenman testified that he had contact with only 40 to 50 investors. Most investors placed their funds with multiple intermediaries
 
 
 [2]
 Barclay was a small discount broker that lacked securities transaction clearing capability. Barclay contracted with A.G. Becker to serve as its fully disclosed clearing agent on several national exchanges. At the time the fraud was terminated, all of Greenman's customer accounts were located at Becker through Barclay
 
 
 [3]
 The Manual for Complex Litigation, Sec. 1.46 (5th ed. 1982), prepared under the auspices of the Federal Judicial Center, opposes the practice
 
 
 [4]
 It is somewhat of a misnomer descriptively to distinguish settlement classes as being temporary. Since a district court is free to modify the certification, all class certifications are essentially temporary until a final judgment is entered. Fed.R.Civ.P. 23(c)(1); General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986)
 
 
 [5]
 The prerequisites of Rule 23(a) must be satisfied in order for a class action to be maintained. None of the parties challenges the district court's holding that these prerequisites were satisfied
 
 
 [6]
 In Eisen, the court held that a class could not be certified pursuant to Rule 23(b)(1)(A). The court reasoned that there was little danger that individual suits will establish inconsistent standards of conduct. 391 F.2d at 564. The court relied on the plaintiffs' admission that the individual claims involved were so small that individual suits were cost prohibitive. Id. This decision may fail to recognize that a purpose of class actions is to enable parties, who have insufficient means to pursue their individual claims, to pool their resources and pursue their common complaints. See Note, Due Process and the Putative Class: The Importance of Pre-Merits Certification Under Federal Rule 23, Class Actions, 15 Val.U.L.Rev. 497, 501 (1981)
 
 
 [7]
 See Newberg, Newberg on Class Actions Sec. 4.05 p. 279 (1985); Note, Class Certification in Mass Accident Cases under Rule 23(b)(1), 96 Harv.L.Rev. 1143, 1154 n. 45 (1983)
 
 
 [8]
 In addition, we note that securities fraud actions often involve cases with unique facts. Consequently, it is difficult in this setting to conclude that a holding would create inconsistent standards for the defendants. See Riordan v. Smith Barney, 113 F.R.D. 60, 65 (N.D.Ill.1986); Tober v. Charnita, Inc., 58 F.R.D. 74, 81 (M.D.Pa.1973); Contract Buyers League v. F & F Investment, 48 F.R.D. 7, 14 (N.D.Ill.1969)
 
 
 [9]
 Although several separate actions were likely in this case, the district court need not have made a preliminary determination that separate actions would likely result if the class was not certified pursuant to Rule 23(b)(1)(B). 7A Wright, Miller & Kane, Federal Practice and Procedure Sec. 1774 at p. 437