Jessie J. PEOPLES, et al., Plaintiffs,

v.

**WENDOVER FUNDING, INC., Defendant.**

No. CIV. Y–97–158.

United States District Court, D. Maryland.

May 8, 1998.

Thomas J. Minton, Baltimore, Maryland, for Plaintiffs.

Russell J. Pope, Baltimore, Maryland, Alan H. Maclin, Mark G. Schroeder, St. Paul, Minnesota, Robert J. Pratte, Lydia P. Crawford, Minneapolis, Minnesota, for Defendant.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

I

Plaintiffs Jessie J. Peoples, Mildred Baldwin, and Forestine Brown bring this class action based upon Defendant Wendover Funding, Inc.'s alleged violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter, "FDCPA"). Plaintiffs' motion for class certification is pending before the Court.

The complaint alleges that Plaintiffs and the members of the putative class participated in a mortgage assignment program administered by the U.S. Department of Housing and Urban Development (respectively, "HUD" and the "Program"). The Program helped low-income mortgagors who, through no fault of their own, experienced temporary financial difficulty by lending funds on very generous terms, permitting the mortgagors to make small payments until their financial situation improved. HUD accomplished this goal by entering into forbearance agreements with the individual mortgagors. HUD ended the Program in 1995 and sold the loans to BCGS, L.L.C. which then hired Defendant to administer the loans.

When HUD sold these loans to BCGS, the contract of sale required BCGS to administer the loan according to HUD guidelines, and the contract named the individual mortgagors as third-party beneficiaries. Specifically, HUD required BCGS to continue to honor the terms of the forbearance agreements previously negotiated between HUD and the individual mortgagors, as long as the individual mortgagor made the required payments. Additionally, the agreement required BCGS to renew the agreements after expiration provided the mortgagors were current in their mortgage payments.

Shortly after Defendant began servicing the loans, the named Plaintiffs and proposed class members received a document from Defendant styled "Notice of Intention to Foreclose." The complaint alleges that Defendant sent this notice to at least 2,000 former Program participants. Plaintiffs contend this notice violates the FDCPA by falsely representing the character or status of the mortgage debt, threatening to take action prohibited by the HUD–BCGS contract and HUD regulations, threatening to take action not intended to be taken, using false or deceptive means to attempt collection of the mortgages, and failing to reveal clearly that Wendover was attempting to collect a debt.

Plaintiffs seek to certify a class, consisting of:

All persons who: as of September 1, 1995, were participants in the [HUD] Mortgage Assignment Program, and whose loans were thereafter assigned by HUD to third-parties who utilized Wendover Funding, Inc., to service the loans; were performing their obligations pursuant to their forbearance agreements with HUD as part of the ... Program, and; received notices of intention to foreclose from Wendover.

## II

The sole issue before the Court is whether to grant Plaintiff's motion for class certification.

### A

FED. R. CIV. P. 23 enumerates the requirements for certification of a class action. The Court may certify a class only if it satisfies all the prerequisites of Rule 23(a), and the requirements of at least one subdivision of Rule 23(b). *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 727–28 (4th Cir.1989), *abrogated on other grounds by Amchem Products, Inc. v. Windsor*, —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Court may look only to Rule 23's criteria to decide whether to certify a class. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (stating that preliminary review of the suit's merits is inappropriate to determine certification issue). The Court possesses considerable discretion to decide whether the proposed class satisfies the prerequisites of Rule 23. *Boley v. Brown*, 10 F.3d 218, 223 (4th Cir.1993); *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir.1993).

### B

▇▇▇ Initially, Defendant argues certification is inappropriate because the Plaintiffs are not members of the proposed class. Though not specified in Rule 23, the Court must be able to ascertain the general bound-

aries of the proposed class at the outset of the litigation, and the named Plaintiffs must be members of the proposed class. *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *In re A.H. Robins*, 880 F.2d at 728; *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir.1976). Defendant contends the named Plaintiffs are not members of the class they seek to represent because none of the Plaintiffs possessed a forbearance agreement with HUD at the pertinent point in time. Moreover, Defendant argues the class is not "administratively ascertainable" because the Court would have to undertake an individualized inquiry as to the existence of each member's forbearance agreement.

These arguments fail to justify denial of class certification. The complaint alleges that Defendant was servicing loans purchased by BCGS from HUD that HUD originally made under the Program, and that Defendant sent improper notices of intent to foreclose to these persons. Defendant admits it contracted with BCGS to service these loans at the time BCGS was purchasing them from HUD; accordingly, Defendant knows precisely which loans are the subject of this litigation, and has exclusive knowledge of who belongs to the proposed class. Moreover, Defendant, having mailed the notices, should know who received them. The Court possesses the authority and discretion to compel Defendant to produce information necessary for the Court to discern the class membership because Defendant alone possesses the relevant information, and because Defendant can perform this task with far less difficulty and greater efficiency than the named Plaintiffs. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356–57, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (holding that the district court possesses power and discretion to order the defendant to perform tasks needed to send class notice under Rule 23(c)).[1] Defendant may not avoid certifica-

---

1. *Sanders* did not address the precise question considered here—whether the Court possesses the power to compel Defendant to perform a task necessary to identify the membership of the class. Rather, *Sanders* concerned whether the district court could compel the defendant to disclose information necessary to send notice to

class members, pursuant to FED. R. CIV. P. 23. Because the Court answered the latter question in the affirmative, *see Sanders*, 437 U.S. at 350, 356, 98 S.Ct. 2380, it follows *a fortiori* that a federal district court may compel a defendant to do the former if the defendant can perform the task with less difficulty and greater efficiency

tion when it, rather than Plaintiffs, maintains exclusive control over the information that alleviates this problem. *See id.* at 359–60, 98 S.Ct. 2380 (finding that district court abused its discretion in requiring plaintiffs to bear the expense of identifying class members when defendant controlled the records).

Moreover, Defendant's concern regarding the existence of a forbearance agreement is without merit considering the factual circumstances surrounding this case. As discussed above, the HUD–BCGS agreement required Defendant to honor forbearance agreements still in effect. By definition, each class member had such an agreement at one time because Program participants all entered into forbearance agreements when they participated in the HUD Program. Thus, the only question is whether the agreement was still effective at the time Defendant sent its notices. If so, assuming for sake of argument that the Plaintiffs' allegations are true, Defendant's notice may have violated the HUD–BCGS agreement, and, therefore, the FDCPA, by attempting to collect a debt that was not due. Moreover, under the terms of the HUD–BCGS agreement, even if a class member's forbearance agreement was no longer extant when Defendant sent its notices, the contract required that BCGS renew the mortgage if the mortgagor was current with payments on the loan. Accordingly, the notice may have violated the FDCPA as to those individuals.[2]

In short, Defendant's liability, if any, stems from sending notices to two groups of people—individuals with forbearance agreements in effect when Defendant mailed the notices, and individuals without such agreements, but who were current in their payments, requiring renewal of their HUD-negotiated payment plans. The crucial fact undergirding Defendant's potential liability as to both groups is that the HUD–BCGS agreement obliged Defendant to continue honoring the terms of both groups' loans, and Defendant could not foreclose on their mortgages. Accordingly, the Court may, if Plaintiffs satisfy the remaining requirements of Rule 23, certify a class encompassing both groups of individuals, which adequately addresses Defendant's concerns relating to the existence of a forbearance agreement. The Court possesses the power to modify the class for this purpose. *See Jenkins v. Massinga,* 592 F.Supp. 480, 487 (D.Md.1984).

Accordingly, the Court concludes that the scope of class membership is ascertainable, and that Plaintiffs belong to the class as former Program participants who were current on their mortgage payments.

### III

#### A

Rule 23(a)(1) requires impracticability of joinder of all members of the purported class. Impracticability refers only to difficulty, not impossibility. *Smith v. B & O R.R.,* 473 F.Supp. 572, 581 (D.Md.1979). While federal courts often couch this requirement in terms of numerosity, *see, e.g., Boley,* 10 F.3d at 223, all the facts of the case are relevant in making a determination of impracticability under this subdivision. *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Nevertheless, class size remains an important consideration, and generally, courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement. *Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38, 40 (S.D.N.Y.1990); Newberg Et Al., Class Actions § 3.05, at 3–25.

Here, the proposed class includes more than 2,000 individuals who received the allegedly offending notices. This fact alone satisfies Rule 23(a)(1). *George v. Baltimore City Pub. Schs.,* 117 F.R.D. 368, 370 (D.Md.

than the representative plaintiff could, *see id.* at 356–57, 98 S.Ct. 2380, because the need to identify class members naturally precedes the need to send notice to the class.

**2.** As discussed above, the Court may not inquire into the suit's merits in resolving the certification issue. The Court does not intend its analysis to express an opinion on the merits of the case. Rather, the Court, for sake of argument, assumes the truth of the complaint's allegations to demonstrate that the class membership is ascertainable, employing a standard similar to that used to analyze the defense of failure to state a claim upon which relief can be granted. *See Finlator v. Powers,* 902 F.2d 1158 (4th Cir.1990).

1987). Moreover, the possible geographic disbursement of these members over a wide area, the small size of the individual claims, and the inconvenience of trying more than 2,000 separate suits, together justify a finding of impracticable joinder. *Alvarado Partners v. Mehta*, 130 F.R.D. 673, 675 (D.Colo. 1990); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir.1982).

## B

 Rule 23(a)(2) requires that the class share common legal or factual issues. Commonality does not require class members to share all issues in the suit, but simply a single common issue. *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C.1992), *aff'd*, 6 F.3d 177 (4th Cir.1993); *Holsey v. Armour & Co.*, 743 F.2d 199, 216–17 (4th Cir.1984). Thus, factual differences among the class members' cases will not preclude certification if the class members share the same legal theory. *Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268, 1275 (4th Cir.1981), *vacated on other grounds*, 457 U.S. 1128, 102 S.Ct. 2952, 73 L.Ed.2d 1345 (1982); *see also DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.1995) (commonality satisfied where class members had differing mortgage contracts with defendant, but all alleged over-escrowing of funds). However, in the unusual case where individual factual considerations predominate over common questions, the Court may refuse certification under either this section or Rule 23(b). *See Zimmerman v. Bell*, 800 F.2d 386, 389–90 (4th Cir.1986) (district court's decision to refuse certification upheld where each shareholder's claims in securities fraud action depended on unique, precise dates of ownership and knowledge of certain facts); *cf. Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112, 1119 (4th Cir.1989) (reversing district court's refusal to certify class in shareholders' derivative action where only individual fact question was how many shares of stock each shareholder owned), *rev'd on other grounds*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991).

The Court finds that the proposed class, as modified, shares several common factual and legal issues. Each class member had a former HUD mortgage obtained under the Program that Defendant serviced. Each class member received a notice of intent to foreclose from Defendant and, by definition of the class, was in full compliance with the terms of that loan. If Defendant did violate the FDCPA by sending the notices, it likely violated the FDCPA as to all the parties. Accordingly, the class shares the common factual issue of receipt of Defendant's notices of intent to foreclose, and the legal issue of whether those notices violated the FDCPA.

Defendant argues that a need for this Court to examine individually each class member's claim defeats commonality. Although a representative plaintiff cannot establish commonality under this Rule if the court must investigate each plaintiff's individual claim, *see Stott v. Haworth*, 916 F.2d 134, 139 (4th Cir.1990), each class member had a mortgage agreement that Defendant may have violated by sending the same, standard, notice. The virtually identical nature of the notices, and the scope of the class as modified, vitiate any need to analyze each class member's individual claim.

## C

 Rule 23(a)(3) requires that the claims or defenses of the class representative typify those of the class as a whole. Thus, Rule 23(a)(3) limits class claims to those fairly encompassed by the class representative's claims. *General Telephone*, 446 U.S. at 330, 100 S.Ct. 1698. The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses. *Central Wesleyan College*, 143 F.R.D. at 637.

 The typicality requirement of Rule 23(a)(3) imposes two types of limitations on the class claims. The first includes cases where the class claims match and are limited to the type of claim that the representative advances (*i.e.*, common claims). The second situation includes cases where the class claims include additional injuries to those alleged by the class representative. *General Tel. Co. v. Falcon*, 457 U.S. 147, 158–59, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). This case falls within the former group because Plain-

tiffs claim that Defendant's notices violated the FDCPA as to each class member, and the complaint contains no indication that the class claims include injuries additional to those alleged by the representatives. Accordingly, the class representative must demonstrate, through the complaint, affidavits, or other evidence, that the claims typify those of the class. *Id.*[3] The key inquiry is whether a sufficient relationship exists between the representative's claim and the class claims. NEWBERG, *supra*, § 3.17, at 3–102.

 Defendant argues the representative's claims are not typical, relying on the same arguments discussed above concerning the named Plaintiffs' membership in the class. Again, the Court finds these arguments unpersuasive. First, both the named Plaintiffs and the class have allegedly suffered the same type of injury (receipt of allegedly wrongful notices of intent to foreclose) based on the same set of facts (sending the notices) which produces the same legal theory (a violation of the FDCPA). Second, even if the facts of each class member's claim differ slightly, that fact alone does not prohibit the named Plaintiffs from satisfying Rule 23(a)(3) precisely because the claims all arise from the same conduct of Defendant and are based on the same legal theory. *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 58 (3rd Cir.1994). Defendant has not proved that drastic factual differences exist among the various class members. *Cf. Boley v. Principi,* 144 F.R.D. 305, 308 (E.D.N.C. 1992) (typicality not satisfied where due process claims turned on whether notice to each class member complied with due process and whether a statute was satisfied as to each class member on differing facts), *aff'd,* 10 F.3d 218 (4th Cir.1993). Finally, Defendant's argument concerning the existence of a forbearance agreement is not helpful given the Court's decision to redefine slightly the proposed class.

### D

 The adequacy of representation requirement contained in Rule 23(a)(4) focus-

es on class counsel's competence and experience and on the degree of antagonism between the class and the representative. *E.g., Smith,* 473 F.Supp. at 581; *George,* 117 F.R.D. at 371. The Supreme Court recently emphasized that the primary purpose of the adequacy requirement of Rule 23(a)(4) is to "uncover conflicts of interest between named parties and the class they represent." *Windsor,* —— U.S. at ——, 117 S.Ct. at 2250. No evidence suggests class counsel is incompetent, or that intra-class conflict exists. Indeed, the highly similar factual nature of the claims as they now appear suggests the appropriateness of representative treatment, and that conflicts are unlikely to develop. *Cf. id.* at ——–——, 117 S.Ct. at 2250–51 (Rule 23(a)(4) not satisfied where named plaintiffs' diversity of medical problems sought to represent one giant class encompassing multiple types and severity of injuries).

However, the Court finds Plaintiff Forestine Brown is barred from representing the class. The FDCPA requires that a civil action be brought within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d). Plaintiffs commenced this action on January 17, 1997. Plaintiff Forestine Brown received her notice of default from Defendant on January 16, 1996—more than one year before bringing this action. Accordingly, the statute of limitations contained in § 1692k(d) bars her cause of action because she brought suit more than one year after her cause of action accrued under the FDCPA. *See Mattson v. U.S. West Communications, Inc.,* 967 F.2d 259 (8th Cir.1992) (cause of action accrued under the FDCPA when creditor mailed collection letter because that date was last opportunity creditor possessed to comply with the FDCPA). The Court will dismiss the case as to Plaintiff Brown.

### IV

### A

Once the Court determines that the class satisfies the requirements of Rule 23(a), the

---

**3.** In the second situation, the representative must demonstrate that he or she suffers the same generic injury, and possesses the same interests, as the class; the precise factual circumstances need not be identical. *Id.* at 1159 n. 5. The

representative may satisfy this requirement by demonstrating that the claims arise from the same pattern or practice, and are based on the same legal theory, as the class claims. *Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir.1984).

Court must determine whether to certify a class under any of the provisions of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(2) or Rule 23(b)(3).

Initially, the Court finds certification inappropriate under Rule 23(b)(2) because that subdivision is not intended to reach cases where the Plaintiffs primarily seek damages. *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 596 (4th Cir.1976); *Zimmerman*, 800 F.2d at 389–90. Although the suit does seek declaratory relief for the class as a whole, the gravamen of the complaint is a prayer for monetary relief. *See* Compl. at 1, 10–11. Accordingly, the Court cannot certify the class under subdivision 23(b)(2). Moreover, although the Court will certify the class solely as to liability, the Court cannot use Rule 23(c)(4) to create a case which satisfies Rule 23(b)(2)'s prerequisites. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 745–46 n. 21 (5th Cir.1996) (stating that district court cannot manufacture predominance of common questions under Rule 23(b)(3) by certifying only limited issues under Rule 23(c)(4)).

Although Plaintiffs do not address certification under Rule 23(b)(1), the Court must analyze the possibility because where certification is appropriate under both Rule 23(b)(1) and Rule 23(b)(3), the Court must certify the class under the former so that any resulting judgment will have *res judicata* effect as to the entire class. *In re A.H. Robins*, 880 F.2d at 728. Under subdivision (b)(1)(A), a risk of separate, individual, actions by class members must, as a preliminary matter, exist to sustain certification. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2nd Cir.1968). The key inquiry is whether such individual suits expose the party opposing the class to a serious risk of a conflicted position regarding the class members; the mere possibility of success by some class members, and the lack of success of others, will not suffice, even if those varying results would constitute *res judicata* as to some class members. *In re Dennis Greenman Secs. Lit.*, 829 F.2d 1539, 1545–46 (11th Cir.1987); *In re Bendectin Products Liab. Lit.*, 749 F.2d 300, 305 (6th Cir.1984).

The Court finds certification inappropriate under either Rule 23(b)(1)(A) or 23(b)(1)(B). The record does not reveal the realistic risk of multiple individual suits, or that individual class members have sued to date. The amount of damages available to the class members in individual actions is likely to be quite small because the FDCPA limits damages to actual damages, and statutory damages of no more than $1000 per violation and attorneys fees and costs. *See* 15 U.S.C. § 1692k(a)(1)-(2)(A) & (a)(3). Actual damages are unlikely to be significant in an individual plaintiff's case because the allegations of the complaint do not suggest that the class members suffered appreciable damages. While Rule 23 certainly intends class actions to encourage multiple litigants with small claims to pursue their grievances collectively and efficiently, *see In re Dennis Greenman Secs. Lit.*, 829 F.2d at 1545 n. 6, the small size of the individual claims seriously reduces the risk of multiple lawsuits, though the sheer class size may offset this fact.

The Court cannot say that multiple suits would create a realistic risk of subjecting Defendant to incompatible standards of conduct regarding the class members. Defendant's act of sending the notice to the class members is an irreversible event. Assuming *arguendo* that a risk of multiple lawsuits exists, the possibility of varying judgments will change neither this fact nor Defendant's ability, or inability, to collect the debt under the terms of the individual loans under relevant law. Moreover, the possibility that multiple judgments will result in *res judicata* as to Wendover is insufficient to certify a class under Rule 23(b)(1)(A). *In re Dennis Greenman Secs. Lit.*, 829 F.2d 1539, 1545–46 (11th Cir.1987); *In re Bendectin Products Liab. Lit.*, 749 F.2d 300, 305 (6th Cir.1984). A similar problem renders certification under subdivision (b)(1)(B) inappropriate. The only possible prejudice that could result to class members from multiple suits is the *res judicata* or *stare decisis* effect of multiple judgments, such as a finding that Defendant's notice did not violate the FDCPA. Under the prevailing view, this risk fails to justify certification under Rule 23(b)(1)(B). *In re Dennis Greenman Secs. Lit.*, 829 F.2d at

1546; *Larionoff v. United States,* 533 F.2d 1167, 1181 n. 36 (D.C.Cir.1976), *aff'd,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977).

## B

 If class certification is not appropriate under Rule 23(b)(1) or (b)(2), the Court may certify a class under Rule 23(b)(3) if it finds that the questions of law or fact common to the class predominate over individualized questions, and that a class action is superior to other methods of adjudication. Generally, certification under this Rule is appropriate when settling the parties' differences in a single proceeding serves their interests by achieving "economies of time, effort, and expense," and by promoting uniformity of decision as to similarly situated class members without sacrificing fairness. *Windsor,* — U.S. at —, 117 S.Ct. at 2246 (quoting Advisory Comm. Notes, 28 U.S.C.App. at 697). Rule 23(b)(3) lists four factors relevant to determining whether common questions predominate and whether class treatment is the best method of adjudication: the class members' interest in pursuing individual actions; the extent and nature of any existing litigation concerning the controversy; the desirability of concentrating the litigation in a particular forum, and; the difficulties of managing a class action. The Supreme Court recently noted that these factors are not exhaustive. *Windsor,* — U.S. at —, 117 S.Ct. at 2246. Finally, although a finding that a case satisfies Rule 23(b)(3) *a fortiori* establishes commonality under Rule 23(b)(2), the converse is not true, and the Court's earlier finding that this case satisfies Rule 23(a)(2) has no bearing on this issue. *Windsor,* — U.S. at —, 117 S.Ct. at 2249.

As discussed above, this case contains the following common questions:

- Each class member had a former HUD mortgage obtained under the Program which BCGS assumed and Defendant serviced.

- Each class member received an identical notice of intent to foreclose from Wendover.

- Each class member was entitled to a continuation of the terms of their HUD loan, either because a forbearance agreement was in effect, or because they were current on their payments.

- The FDCPA provides the same legal remedy to all class members.

- Defendant's liability, if any, stems from the FDCPA.

As the Court has defined the class, the only individual issue that will need to be litigated is the damages sustained by each class member. However, the Court may, under Rule 23(c)(4), certify a class only as to liability.[4] Should Wendover be found liable, class members who wish to enforce the judgment may do so by filing an appropriate action. The Court therefore finds that Rule 23(b)(3)'s requirement is satisfied because the above common questions, which are predicated upon highly similar factual situations among class members, predominate over the sole significant individualized issue of class members' damages. *Cf. Windsor,* — U.S. at — – —, 117 S.Ct. at 2249–50 (finding predominance requirement was not met in settlement class because class members' shared experience of asbestos exposure and common interest in receiving fair and prompt compensation for injuries insufficient to overcome differences in each member's exposure and governing state law).

On the issue of superiority, the Court finds this case is a prime candidate for class certification under the criteria enumerated in Rule 23(b)(3). First, it appears from the complaint that the actual damages of each class member are small. In this circumstance, the parties have little incentive—and quite possibly lack the means—to litigate their claims individually, and a class action best resolves the issue by permitting the class to air their common grievances in a single proceeding. *See Windsor,* — U.S. at

---

4. The Fifth Circuit holds, and the Court agrees, that Rule 23(c)(4) does not permit a federal district court to certify a class under Rule 23(b)(3) by splitting a class action to create predominance. Rather, the Court must first determine that common questions predominate in the case as a whole, and then may split the issues under Rule 23(c)(4). *Castano v. American Tobacco Co.,* 84 F.3d 734, 745–46 n. 21 (5th Cir.1996).

——, 117 S.Ct. at 2246; *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 626 (E.D.Pa. 1994); *MacNeal v. Columbine Exploration Corp.,* 123 F.R.D. 181, 187 (E.D.Pa.1988); *Brewer v. Friedman,* 152 F.R.D. 142, 144 (N.D.Ill.1993) (noting same in case arising under the FDCPA); WRIGHT, MILLER & KANE, 7A FEDERAL PRACTICE & PROCEDURE § 1777, at 518. Second, certification best serves efficiency "because the class action provides a large group of litigants an opportunity to adjudicate their common claims in a single lawsuit where the costs of discovery, motions, and trial would dissuade many of them from asserting their rights." *Brewer,* 152 F.R.D. at 144. Finally, no evidence suggests that individual members have brought separate actions.

The only countervailing factor is the management cost associated with an action certified under Rule 23(b)(3). Rule 23(c)(2) requires that in a class action certified under Rule 23(b)(3), the Court must direct the "best notice practicable" to the class members, including individual notice to all members whom the Court can identify with reasonable effort. The notice must advise each member that the Court will exclude members from the class who request exclusion by a certain date, that judgment will bind all members who do not request exclusion, and that members may enter appearances through counsel. These notices will not create a substantial burden because Defendant possesses the information necessary to determine the identity of the potential class members.

### V

Based upon the foregoing analysis, the Court holds that class certification is appropriate under FED. R. CIV. P. 23(b)(3). Accordingly, the Court will grant Plaintiffs' motion for class certification, and will, pursuant to FED. R. CIV. P. 23(b)(3), 23(c)(1), and 23(c)(4), conditionally certify the following class solely as to the issue of Defendant's liability:

> All persons or entities who, as of September 1, 1995, were participants in the Mortgage Assignment Program of the United States Department of Housing and Urban Development ("HUD"); whose mortgages were assigned by HUD to BCGS, L.L.C. and were subsequently serviced by Wendover Funding, Inc.; who received notices of intention to foreclose on their mortgages from Wendover Funding, Inc.; and whose loans were either subject to a HUD-negotiated forbearance agreement as part of the Mortgage Assignment Program, or were current in their payments, at the time the notices were sent.

The Court dispenses with a hearing on the motion because the record before the Court adequately presents the relevant facts and legal contentions and oral argument would not aid the decisional process. Local Rule 105(6).